IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

RAMÓN CALDERÓN,

**Plaintiff,**

v.

RICKY KIRAN KUMAR PATEL, et al.

**Defendants.**

CIVIL NO. 22-1540 (RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Plaintiff Ramón Calderón's ("Plaintiff Calderón") *Motion for Summary Judgment*. (Docket No. 52). For the reasons outlined below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Plaintiff Calderón's *Motion for Summary Judgment*.

## I.    FACTUAL BACKGROUND

Plaintiff Calderón's *Complaint* states that in May 2021, Defendants Ricky Kiran Kumar Patel ("Mr. Patel") and Arti Patel ("Mrs. Patel") (collectively, "Defendants") leased a residential property in Dorado (the "Property"). (Docket No. 1 ¶¶ 6, 9). The parties' leasing agreement ("Lease Agreement") set the term of the lease to three years, from July 15, 2021, to July 14, 2024. Id. ¶ 15. Defendants were to pay Plaintiff Calderón $21,000.00 per month in rent while Plaintiff Calderón would pay for all utility services

monthly and be reimbursed by Defendants. Id. ¶¶ 13, 17. Defendants

paid Plaintiff Calderón three months of rent at the execution of

their lease (totaling $63,000.00) alongside a security deposit of

$21,000.00 that was to be returned to Defendants when the terms of

the Lease Agreement were fulfilled. Id. ¶¶ 14, 16.

In July 2022, Defendants stopped paying rent and left the

Property, thereby unilaterally terminating their Lease Agreement

with Plaintiff Calderón. Id. ¶¶ 21, 23. Plaintiff Calderón claims

they had not paid utilities since at least February 2022. Id. ¶

22. Plaintiff Calderón sent Defendants a Notice of Default on July

18, 2022, providing Defendants with ten days to cure their defaults

and uphold their obligations under the parties' Lease Agreement.

Id. ¶¶ 24-29. Plaintiff Calderón demanded that Defendants provide

specific performance of their leasing obligations, namely

occupying the Property and making monthly rent and utility

payments, or, alternatively, paying all remaining monthly rent

payments through July 14, 2024 (twenty-four months of rent totaling

$504,000.00).[1] Id. ¶ 29. Defendants did not respond, and Plaintiff

Calderón has retained the security deposit while Defendants' debts

remain outstanding. Id. ¶¶ 29-32.

Defendants acknowledge the existence of the Lease Agreement

and that they have not paid rent to Plaintiff Calderón since July

---

[1] There is some confusion on this matter. While the Complaint states that twenty-
four months of rent are due, both parties later repeat that twenty-two months
of rent are due. (Docket Nos. 1 ¶ 29 and 71-1 at 5-6).

2022. (Docket No. 25 at 2). However, they deny that they have not paid utilities since at least February 2022, unilaterally terminated their lease, or failed to cure any defaults under the Lease Agreement. Id. at 2-3. They further assert that they had found a replacement lessee for the Property prior to July 2022 after talking to Plaintiff Calderón's son-in-law about subletting the Property, but Plaintiff Calderón had refused to allow them to sublet. Id. at 5.

## II.  PROCEDURAL BACKGROUND

Plaintiff Calderón filed the present case against Defendants for breach of contract on November 14, 2022. (Docket No. 1 ¶ 1). Plaintiff Calderón sought specific performance from Defendants, including payment of $525,000.00 in outstanding rent and $21,648.13 in outstanding utilities under the parties' Lease Agreement ($546,648.13 in total); in the alternative, Plaintiff Calderón requested no less than $546,648.13 in damages. Id. ¶¶ 1, 37-40, 52. The Court has diversity jurisdiction over the present case because the amount in controversy exceeds $75,000.00 and both Plaintiff Calderón and Defendants are citizens of different states (namely, Plaintiff Calderón is a citizen of Puerto Rico while Defendants are Florida citizens). Id. ¶¶ 1-4; see 28 U.S.C. §1332.

After the filing of Plaintiff Calderón's *Complaint*, various difficulties ensued as Plaintiff Calderón sought to serve process on Defendants. (Docket Nos. 4; 5 and 6). Ultimately, process was

served, and the Court entered and later vacated default judgment on Mr. Patel after the Court found that Defendants had good cause for their failure to timely plead or otherwise defend against Plaintiff Calderón's *Complaint*. (Docket Nos. 11; 12; 15 and 22).

Defendants filed their *Answer* on November 29, 2023. (Docket No. 25). The parties held a settlement conference in April 2024. (Docket No. 44). On June 10, 2024, Defendants filed a *Motion to Dismiss*, which the Court denied on November 4, 2024. (Docket Nos. 45 and 70). Meanwhile, Plaintiff Calderón filed the present *Motion for Summary Judgment* on July 31, 2024 with an accompanying *Statement of Uncontested Material Facts* ("*SUMF*"). (Docket Nos. 52 and 53). Defendants filed a *Response* on September 23, 2024 with an accompanying *Statement of Contested Material Facts* ("*SCMF*"). (Docket Nos. 59 and 60). On November 4, 2024, Plaintiff Calderón filed his *Reply* to Defendants' *Response*. (Docket No. 71).

### III. APPLICABLE LAW

**A. Summary Judgment**

Summary judgment is proper if (i) there is no genuine dispute as to any material fact and (ii) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence about the fact is such that "a reasonable jury could resolve the point in the favor of the non-moving party." Staples v. Gerry, 923 F.3d 7, 12 (1st Cir. 2019) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citation

omitted). A fact is "material" if it "has the potential of affecting the outcome of the case." Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 53, 62 (1st Cir. 2020) (citations and internal quotation marks omitted).

The movant "bears the burden of showing the absence of a genuine issue of material fact." U.S. Dep't of Agric. v. Morales-Quinones, 2020 WL 1126165, at *1 (D.P.R. 2020) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Next, the burden shifts to the non-movant to present at least one issue of fact which is "both 'genuine' and 'material.'" Id. (citing Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citation omitted)). A non-movant must show "through submissions of evidentiary quality, that a trialworthy issue persists." Robinson v. Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020) (quotation omitted).

A court "must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences." Burke Rozzetti v. Ford Motor Co., 439 F.Supp.3d 13, 18 (D.P.R. 2020) (citation omitted). Summary judgment may be proper if the nonmoving party's case solely relies on improbable inferences, conclusory allegations and unsupported speculation. See id. (citation omitted). Furthermore, the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation

omitted). A court should thus review the record *in its entirety* and refrain from making credibility determinations or weighing the evidence. *See* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). A court should also "give credence to the evidence favoring the nonmovant" as well as "uncontradicted and unimpeached" evidence supporting the moving party, "at least to the extent that that evidence comes from disinterested witnesses." Id. at 151 (citation omitted).

Local Rule 56 also governs summary judgment. *See* L. Civ. R. 56. Per this Rule, a movant must provide a "separate, short, and concise statement of material facts, set forth in numbered paragraphs" showing there is no genuine issue of material fact and supported by a record citation. Id. at 56(b). A non-movant must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the movant's statement of material facts." Id. at 56(c). "Unless a fact is admitted, the reply shall support each denial or qualification by a record citation." Id. A movant "replying to the opposition to a motion for summary judgment shall submit with its reply a separate, short, and concise statement of material facts, which shall be limited to any additional fact submitted by the opposing party." Id. at 56(d). Facts within a supporting or opposing statement of material facts, "if supported by record citations" per Local Rule 56, "shall be deemed admitted unless properly controverted." Id.

at 56(e). The Court may disregard facts that are not sufficiently supported by citations to the record and has "no independent duty" to consider portions of the record "not specifically referenced in the parties' separate statement of facts." Id.

**B. Breach of Contract**

Under Puerto Rico law, a breach of contract claim has three elements: (i) a valid contract, (ii) a breach of that contract by one of the parties, and (iii) damages consequent to that breach. Yacht Caribe Corp. v. Carver Yacht LLC, 270 F. Supp.3d 547, 555 (D.P.R. 2017) (citations omitted). A valid contract requires consent, object, and cause, and parties must also satisfy the duty of good faith performance to other contracting parties. *See* Soto v. State Indus. Prods., Inc., 642 F.3d 67, 72-73 (1st Cir. 2011) (citing P.R. Laws Ann. tit. 31, § 3391); Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 108 (1st Cir. 2001) (citation omitted). Consent can be shown through "the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." P.R. Laws Ann. tit. 31, § 3401.

In the context of a leasing agreement, the lessor can be the owner or any other person whose management powers include leasing the relevant property. P.R. Laws Ann. tit. 31, § 10121.[2] One co-owner cannot lease the property without the consent of the others,

---

[2] Although both parties cite to this provision, they did not provide the Court with a certified translation and Westlaw does not provide an English version.

although the leasing contract may be ratified expressly or tacitly. Id. Additionally, any subsequent modification of a lease agreement must observe the same formalities as the original lease agreement. P.R. Laws Ann. tit. 31, § 10153.

Courts will generally presume the validity of a contract and the consent thereof. Citibank Glob. Mkts., Inc. v. Rodriguez Santana, 573 F.3d 17, 24 (1st Cir. 2009) (noting the Puerto Rico Supreme Court's recognition of an "important social interest in holding parties to their contracts") (citation omitted). "It is widely accepted that '[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations.'" Markel Am. Ins. Co. v. Diaz-Santiago, 674 F.3d 21, 31 (citing P.R. Laws Ann. tit. 31, § 2994).

When a contract's terms are clear, leaving no doubt regarding the parties' intentions, the contract should be interpreted "according to 'the literal sense of its stipulations.'" Id., 674 F.3d at 31 (citing P.R. Laws Ann. tit. 31, § 3471); In re P.R. Pub. Fin. Corp., 109 F.4th 37, 46 (1st Cir. 2024) (a contract should be read literally when its terms are clear and leave no doubts as to the contracting parties' intentions) (citation omitted). "[E]xtrinsic evidence of the parties' intent is inadmissible in the face of a clear and unambiguous contract term under Puerto Rico Law." See Borschow Hosp. and Med. Supplies, Inc.

v. Cesar Castillo, Inc., 96 F.3d 10, 16 (1st Cir. 1996); Triangle Cayman Asset Co. v. LG and AC, Corp., 52 F.4th 24, 32 (1st Cir. 2022).

A party that fails to comply with a contract's essential obligations is in breach of that contract. *See* Markel Am. Ins. Co., 674 F.3d at 31 (citations omitted). A breaching party may be held "liable to the aggrieved party for damages which were foreseen or may have been foreseen." Xynergy Healthcare Cap. II LLC v. Mun. of San Juan, 2021 WL 312544 at *7 (D.P.R. 2021) (citations omitted). In Puerto Rico, "contracts are generally only valid between the parties who execute them, and actions arising out of a contract can be prosecuted only by one contracting party against the other." *See* Dantlzer, Inc. v. Lamas-Besos, 2010 WL 2572618, at *3 (D.P.R. 2010) (citations omitted).

## IV.  FINDINGS OF FACT

To make its findings of fact, the Court reviewed Plaintiff Calderón's *Complaint*, *Motion for Summary Judgment* and *SUMF*, Defendant's *Response* and *SCMF*, and Plaintiff Calderón's *Reply*, and the exhibits accompanying these documents. (Docket Nos. 1; 1-1; 1-2; 1-3; 1-4; 1-5; 52; 53; 53-1; 53-2; 53-3; 53-4; 53-5; 59; 60; 71 and 71-1). The Court makes the following findings of fact after

crediting only material facts that are properly supported by a
record citation and uncontroverted.[3]

## A. The Property and Lease Agreement

1. There is a two-story residence at Dorado Beach East #269,
   Dorado, Puerto Rico (the "Property"). (Docket No. 1 ¶ 6).

2. The Property is co-owned by Plaintiff Calderón and Yvette
   Calderón-Casalduc ("Mrs. Calderón"), who is Plaintiff
   Calderón's daughter. (Docket Nos. 45-1 at 37; 53-1 at 14-
   15 and 71-1 at 15).

3. Mrs. Calderón is married to Giecy Morales ("Mr. Morales"
   or "Pacho"), Plaintiff Calderón's son-in-law. (Docket Nos.
   53-1 at 13, 15 and 59 at 9).

4. Plaintiff Calderón, as lessor, and Defendants, as lessees,
   executed and signed a Lease Agreement for the Property in
   May 2021. (Docket Nos. 1 ¶¶ 11-12 and 1-1 at 5).

5. The Lease Agreement is the only agreement entered into by
   Plaintiff Calderón and Defendants concerning the Property,
   and Plaintiff Calderón and Defendants are the only parties
   listed on the Lease Agreement. (Docket Nos. 1-1 at 1 and
   53-1 at 16).

---

[3] References to a specific Finding of Fact shall be cited in the following
manner: (Fact ¶ _).

6. The Lease Agreement was for "a three year (36 months) rental to commence on July 15, 2021 and to terminate on July 14, 2024." (Docket Nos. 1-1 ¶ 3 and 53 at 2).

7. The Lease Agreement stated that the Property would be rented by the lessees for the sum of $21,000.00 per month. (Docket No. 1-1 ¶ 2).

8. Under the Lease Agreement, the lessor was "responsible for paying all utility services" required on the Property, but "the cost of utilities will be reimbursed" by lessees to the lessor on a monthly basis. This included electricity and water, which would remain in Plaintiff Calderón's name. Plaintiff Calderón would send invoices to Defendants, who would then reimburse him. (Docket No. 1-1 ¶ 6).

9. The Lease Agreement also required the first three months of rent to be paid upfront (totaling $63,000.00), alongside a security deposit equivalent to one month of rent ($21,000.00). This initial payment was due at signing and totaled $84,000.00. *See* id.

10. The Lease Agreement stated that the security deposit could not be used as payment for the last month's rent and would be returned to Defendants "without interest, after the full and faithful performance by Lessee of the provisions of" the Lease Agreement. Id. ¶ 5.

11. The Lease Agreement required the lessee to use and occupy the property as a private single-family residence. (Docket No. 1-1 ¶ 11).

12. Paragraph 13 of the Lease Agreement does not allow subletting of the Property:

> **Assignment and Subletting** – Lessee shall not assign this lease or sublet or grant any concession or license to the use of the premises or any part thereof at any time during the lease.

(Docket No. 1-1 ¶ 13).

13. Paragraph 16 of the Lease Agreement governs the resolution of any default by the lessees:

> **Default** – If any default is made in the payment of rent, or any part thereof, at the times hereinbefore specified, or if any default is made in the performance of, or compliance with any other term or condition hereof, the lease, at the option of Lessor, shall terminate and be forfeited. Lessor may re-enter the premises and remove all persons thereof. Lessee shall be given written notice of any default or breach, and termination and forfeiture of the lease shall not result if, within ten (10) days of receipt of such notice, Lessee has corrected the default or breach or has taken reasonable action likely to effect such correction within a reasonable time. Upon Lessee's failure to make the rental payment for a period of thirty (30) days or more, Lessor shall have the right to deem premises abandoned by Lessee and the conditions on Abandonment on next paragraph shall apply.

(Docket No. 1-1 ¶ 16).

14. Paragraph 17 of the Lease Agreement governs the resolution of any abandonment by the lessees:

> **Abandonment** - If at anytime during the term of this lease Lessee abandons or fails to pay rent for thirty (30) days or more on the demised premises, Lessor may, at his option, enter the demised premises by any means without being liable for any prosecution therefore, and without becoming liable to Lessee for damages or for any payment of any kind whatsoever. **Lessor may also, at his discretion, re-let the demised premises, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such re-letting. This re-letting by Lessor shall not release Lessee of his obligations under this contract.** If Lessor's right of reentry is exercised following abandonment of the premises by Lessee, lessor may consider any personal property belonging to Lessee and left on the premises to also have been abandoned, in which case Lessor may dispose of all such personal property in any manner lessor shall deem proper and is hereby relieved of any and all liability for doing so.

(Docket No. 1-1 ¶ 17) (emphasis added).

15. The Lease Agreement established that notices were to be given to Plaintiff Calderón, if directed at the lessor, and to Mr. Patel, if directed to the lessee. Physical and email addresses were provided for both Plaintiff Calderón and Mr. Patel. No other parties were listed. (Docket No. 1-1 ¶ 23).

## B. Breakdown in the Parties' Relationship

16. On May 12, 2022, Mr. Patel sent an email to Margarita Hernández (Ms. Hernández), Plaintiff Calderón's assistant, using the email address provided for notice in the Lease Agreement. The email stated:

> Hey Margarita, I hope you had a nice time on vacation. I just spoke with Pacho and he confirmed it's fine to sublet [the Property] while we are away. I wanted to let you know you c an [sic] contact me directly if you have any questions or need anything from me. Thank you again.

    (Docket Nos. 1-1 ¶ 23; 53 ¶ 11 and 53-2).

17. Ms. Hernández forwarded Mr. Patel a letter from Plaintiff Calderón on May 24, 2022.[4] The letter, dated May 23, 2022, informed Defendants that pursuant to Section 13 of the Lease Agreement, "subletting this property is not acceptable" and "all inquiries regarding this property/lease must be addressed directly to me [Plaintiff Calderón]." (Docket No. 53-3).

18. On July 12, 2022, Mr. Patel emailed Ms. Hernández, stating Defendants "have terminated our lease as of yesterday Monday July 11, 2022. I have notified Pacho that there are potential tenants available to take over the lease. We have given payments that cover the entire year. I will go over

---

[4] The letter references a May 20, 2022 email from Mr. Patel to Mrs. Hernández. The Court presumes this is a typographical error and that the May 23, 2022 letter references the May 12, 2022 email from Mr. Patel.

utilities with my wife." Mr. Patel also stated that "A few months ago" Mr. Morales had told him "it was fine" to split the lease with another person, but "You notified us recently that we are unable" to split the lease. Mr. Patel reiterated that he would get back to Ms. Hernández "regarding utilities." (Docket No. 53-4).

19. Defendants stopped living at the Property on July 5, 2022, and have not occupied the Property since that date. (Docket No. 53-1 at 11, 16, 31, 37).

20. Defendants have not made any rent payments since July 2022. (Docket No. 1 ¶ 21).

21. On March 27, 2024, in response to Plaintiff Calderón's *First Set of Interrogatories Request for Production of Documents and Request for Admissions*, which required Defendants to produce "copy of all payments made by you to the Plaintiff in connection with the [Lease Agreement] or the Property, including but not limited, to rent and/or utilities payments (i.e. power and water)," Defendants averred that: "[Plaintiff Calderón] has only sought to collect payments for rent allegedly accrued after July 2022 and utilities expenses billed on May and June 2022. All other payments have been satisfied. Copy of the satisfied payments shall be forthcoming as it requires substantial

compilation of bank records not readily available." (Docket No. 53-1 at 18, 39).

22. On July 11, 2022, Mr. Patel received an email from Mrs. Hernández stating Defendants had not paid $21,000.00 in rent for July 2022 or $16,189.91 in utility fees. (Docket No. 53-4 at 2).[5]

### V.   DISCUSSION

**A. Summary Judgment is Warranted as to Plaintiff Calderón's Breach of Contract Claim**

The Court concludes that Plaintiff Calderón established the following uncontested facts: (i) a contract existed, as Plaintiff Calderón and Defendants entered into the Lease Agreement, and (ii) Defendants violated the terms of the contract by vacating the Property in July 2022 and stopping their rent payments. (Facts ¶¶ 4-5, 19-20). While Defendants offer justifications for their actions, they do not contest that they violated the terms of the Lease Agreement. (Docket Nos. 59 and 60). It stands to reason (and Defendants have not persuasively shown otherwise) that Defendants' decision to vacate the Property and stop paying rent resulted in financial damages for Plaintiff Calderón. The Court concludes that Plaintiff Calderón has made the requisite showing to obtain summary judgment on his breach of contract claim. *See* Yacht Caribe Corp.,

---

[5] A July 5, 2022 email from Mrs. Hernández to Mr. Patel lists an outstanding utility bill in the amount of $16,532.36; the amount of utility payments requested has since varied. (Docket Nos. 53-4 at 3 and 71).

270 F.Supp.3d at 555 (a breach of contract claim requires a contract, a contractual breach, and damages).

**B. Additional Arguments Raised by Defendants**

Defendants raise various arguments alleging the existence of a genuine dispute of material fact to defeat Plaintiff Calderón's *Motion for Summary Judgment*. (Docket No. 59). However, for the reasons laid out below, the Court determines these arguments are ultimately unpersuasive.

*i.  Mrs. Calderón's Husband and Her Status as Co-Owner*

Defendants first argue that the Lease Agreement is invalid under Puerto Rican law because Plaintiff Calderón has not demonstrated his co-owner, Mrs. Calderón, consented to the Lease Agreement. (Docket No. 59 ¶¶ 26-28). Defendants accurately assert that Puerto Rico's Civil Code requires a co-owner's consent or ratification when another co-owner decides to rent out a jointly owned property. P.R. Laws Ann. tit. 31, § 10121. Defendants argue the record does not show Mrs. Calderón consented to the Lease Agreement when the contract was signed, voiding the Lease Agreement and allowing Defendants to evade their contractual obligations. (Docket No. 59 ¶¶ 25-27).

Puerto Rican courts generally afford contracts a presumption of validity. Citibank Glob. Mkts., Inc., 573 F.3d at 24. Unfortunately for Defendants, they lack standing to question the validity of the Lease Agreement here because their contractual

rights were not limited or harmed by any purported failure by
Plaintiff Calderón to obtain Mrs. Calderón's consent to the Lease
Agreement. *See* <u>Benjamin v. Aroostook Med. Ctr., Inc.</u>, 57 F.3d 101,
106 (1st Cir. 1995) (there is a "general proscription on third-
party standing" although limited exceptions exist). Instead,
Defendants benefitted from the Lease Agreement and adhered to the
contract's terms until they chose to breach the agreement. (Facts
¶¶ 19-20). They do not show any interest in Mrs. Calderón's
contractual rights that would give them standing to raise this
issue. *See*, *e.g.*, <u>Valley Forge Christian Coll. v. Ams. United for
Separation of Church and State</u>, Inc. 454 U.S. 464, 471, 474 (1982)
(a litigant needs standing "to challenge the action sought to be
adjudicated in the lawsuit" and "cannot rest his claim to relief
on the legal rights or interests of third parties") (citation
omitted). If Mrs. Calderón's interest in the Property was infringed
upon, that is her claim to bring, not Defendants', and there is no
indication she cannot do so. Defendants do not show the Lease
Agreement is otherwise invalid, and simply raising this as an
alleged factual dispute does not prevent the Court from granting
a "properly supported motion for summary judgment." Scott, 550
U.S. at 379 (2007); *see also* <u>Burke Rozzetti</u>, 439 F.Supp.3d at 18
(while the Court "must view the evidence in the light most
favorable to the nonmoving party and give that party the benefit

of any and all reasonable inferences," it need not credit improbable inferences or unsupported speculation).

Defendants next argue that Mrs. Calderón's husband agreed to the modification of the Lease Agreement, tendering emails written by Mr. Patel himself in support of this argument. (Docket No. 53-2). Regardless of whether such dealings occurred as proffered by Defendants, they do not thwart summary judgment because the purported modifications were never reduced to a written document signed by the parties to the Lease Agreement. Puerto Rico law requires that modifications of the lease agreements observe the same formalities as the original lease agreement. *See* P.R. Laws Ann. tit. 31, § 10153. Here, the original Lease Agreement was reduced to writing and signed by Plaintiff Calderón and Defendant Patel. (Facts ¶¶ 4-5). But the purported modifications were rejected by Plaintiff Calderón and never put in writing.

    ii.  *Proposed Interpretations of the Lease Agreement*

Defendants advocate for strained interpretations of the Lease Agreement that are unpersuasive given the clarity of the Lease Agreement's terms. *See* In re P.R. Pub. Fin. Corp., 109 F.4th 37, 46 (1st Cir. 2024) (a contract should be read literally when its terms are clear and leave no doubts as to the contracting parties' intentions). First, Defendants argue the Lease Agreement is a month-to-month rental, but the plain language of the document states that the is for "three years." (Docket Nos. 1-1 and 59 ¶¶

36-38, 45-46); (Fact ¶ 6). While rent may be paid monthly, the plain language of the Lease Agreement clearly contemplates a contract that runs for a term of three years, or thirty-six months. (Fact ¶ 6). The Court rejects Defendants' interpretation of this provision of the Lease Agreement.

Defendants also assert that Paragraph 17 of the Lease Agreement should be interpreted as meaning "that upon re-letting" the Property, Plaintiff Calderón would lose his ability to demand rent payments from Defendants "because he would not be able to make the demised premises available for occupancy by the defendant[s]." (Docket No. 59 ¶ 45). This reading contradicts the actual text of the Lease Agreement regarding the potential abandonment of the Property or default by Defendants, which reads in part, "re-letting by Lessor shall not release Lessee of his obligations under this contract." (Facts ¶¶ 13-14). Furthermore, even assuming Defendants' arguments are accurate, there is no indication that Plaintiff Calderón was not in a position to let Defendants occupy the Property. Rather, it was Defendants' choice to vacate. (Facts ¶¶ 18-19); (Docket No. 59 ¶ 36). The Court finds there is no genuine dispute of material fact here because Defendants' proposed "sensible reading" of the Lease Agreement contradicts the express provisions of the contract. (Facts ¶¶ 13-14); (Docket No. 59 ¶ 45).

### iii. The Property's Mortgage Agreement

Defendants also resurrect arguments from their *Motion to Dismiss* alleging that covenants of the Property's mortgage were purportedly violated when Plaintiff Calderón leased the Property to Defendants instead of using it as a residential property for himself and Mrs. Calderón. (Docket Nos. 45 ¶¶ 13-18, 33-35, 40-41 and 60 at ¶¶ 18-23). Defendants do not claim any special relationship or interest in the mortgage that would give them standing to raise this issue. Id.; *see*, *e.g.*, Valley Forge Christian Coll., 454 U.S. at 471, 474. Furthermore, Defendants have not shown how this issue is material to the case at bar. *See* Robinson, 950 F.3d at 24. The Court will not follow this argument any further.

### C. Damages

Having determined that summary judgment is warranted, the Court turns to Plaintiff Calderón's request for compensation. Plaintiff Calderón correctly asserts that penal clauses are valid in Puerto Rico. (Docket No. 71 at 10); *see* Rochester Cap. Leasing Corp. v. Williams Int'l Ltd., 3 P.R. Offic. Trans. 226 (1974). The Civil Code specifically contemplates both the existence of penal clauses and courts' ability to modify them, allowing parties to agree in advance on the extent of damages due in the event of a breach of contract. *See* P.R. Laws Ann. tit. 31, § 9832. A court must respect the binding nature of penal clauses but may mitigate

penalties when there are significant economic disproportionalities between the penalty and the benefit upon considering the various factors listed in § 9832. Id. Courts thus hold the "broad but not unfettered" discretion to mitigate the burden imposed by penal clauses. Teal Peak Cap., LLC v. Goldman, 2022 WL 875493, at *2 (D.P.R. 2022) (citing In re Alvarez, 473 B.R. 853, 863 (B.A.P. 1st Cir. 2012)). Courts have required the debtor to bear the "burden of demonstrating lack of proportion between the breach and the penalty." In re Alvarez, 473 B.R. at 863.

The Court determines that Paragraph 17 of the Lease Agreement functions as a penal clause as it explicitly provides that in the event of abandonment or default by the Property's lessees, the lessor can re-let the Property while the lessee remains obliged to pay the remaining balance of rent due under the Lease Agreement. (Fact ¶ 14). Both parties acknowledge Paragraph 17's penal function. (Docket Nos. 59 ¶ 43 and 71 at 9).

Plaintiff Calderón's *Complaint* seeks $525,000.00 in outstanding rent and $21,648.13 in outstanding utilities from Defendants under the parties' Lease Agreement ($546,648.13 in total); alternatively, Plaintiff Calderón has requested no less than $546,648.13 in damages. (Docket No. 1 at 10). At this stage of the proceedings, the Court lacks sufficient information to determine the appropriate amount of any damages payable to Plaintiff Calderón. Both parties vigorously contest the amount and

extent of utility fees that are due, the exhibits offered by Plaintiff Calderón have multiple handwritten annotations on the bills amending the amounts due without additional explanation, and the months of rent claimed by Plaintiff Calderón has varied between twenty-two and twenty-four months. (Docket Nos. 1; 52; 53; 53-4; 53-5; 59; 60; 71 and 71-1). Plaintiff Calderón's report of the outstanding amount of utility fees has also increased from $21,648.13 to $23,861.96 since filing the *Complaint*. (Docket No. 1 at 10). While Defendants contest the amount of utility fees requested, they have not comprehensively addressed the full amount of damages requested by Plaintiff Calderón. (Docket Nos. 59 and 60).

Consequently, while summary judgment is appropriate for breach of contract, controversy exists as to the amount of damages available to Plaintiff Calderón. Accordingly, the trial of this matter remains set for **March 11 to 13, 2025.**

## VI.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff Ramon Calderón's *Motion for Summary Judgment* at Docket No. 52.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of January 2025.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge